UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUSTIN CULLEN,
*Plaintiff*,

v.

KEITH MELLO
*Defendant*.

No. 3:21-cv-617 (VAB)

**RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Justin Cullen ("Officer Cullen") filed this lawsuit against Keith Mello ("Chief Mello") alleging violations of his substantive and procedural Due Process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article First, § 10 of the Connecticut Constitution. *See* Am. Compl. ¶¶ 46–74, ECF No. 9.

On April 12, 2022, Officer Cullen moved for summary judgment on all counts, *see* Pl.'s Mot. for Summ. J., ECF No. 25, and on May 3, 2022, Chief Mello filed a cross-motion for summary judgment on all counts, *see* Def.'s Mot. for Summ. J., ECF No. 26.

For the following reasons, Officer Cullen's motion for summary judgment is **DENIED.**

Chief Mello's motion for summary judgment is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Background[1]**

Officer Cullen was employed by the Manchester Police Department ("MPD") as a police

---

[1] The facts are taken from Chief Mello's Local Rule 56(a) Statement, Officer Cullen's Local Rule 56(a) Statement, and supporting exhibits filed by all parties. See D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the

officer. Pl.'s Local Rule 56(a)2 Statement of Facts in Opp'n to Summ. J. ¶ 1, ECF No. 27-1 ("Pl.'s 56(a)2 Statement"); Def.'s Local Rule 56(a)2 Statement of Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 1, ECF No. 26-10 ("Def.'s 56(a)2 Statement"). Under the collective bargaining agreement between the Town of Manchester and the Manchester Police Officers' Association (the "Union"), Officer Cullen was a "probationary employee" until September 24, 2020. Def.'s 56(a)2 Statement ¶ 2; Pl.'s 56(a)2 Statement ¶ 1.

On May 14, 2020, a citizen submitted a complaint about Officer Cullen to MPD alleging non-consensual sex that occurred while he was off duty. Def.'s 56(a)(2) Statement ¶ 3.

On June 29, 2020, Officer Cullen resigned from his position as a Connecticut State Police Officer Standards and Training Council ("POSTC") certified probationary police officer at MPD. *Id.* ¶ 4; Pl.'s 56(a)2 Statement ¶ 11. At the time, MPD had started but not yet completed an investigation into the citizen complaint. Def.'s 56(a)2 Statement ¶ 9. After Officer Cullen resigned, MPD filed a POSTC-57 form indicating that Officer Cullen resigned from employment while under investigation, as required under Conn. Gen. Stat. § 7-291c. *Id.*

On August 17, 2020, the Town of Plainville's Town Council approved the hiring of Officer Cullen as a police officer in the Town of Plainville. *Id.* ¶ 7. As part of the hiring process, the Plainville Police Department conducted a background investigation.[2] *Id.* ¶¶ 5–6; Pl.'s Rule 56(a)2 Statement ¶ 4.

After hiring was complete, Chief Catania, the Chief of the Plainville Police Department, requested that POSTC provide Officer Cullen's certification card. Def.'s Rule 56(a)2 Statement ¶ 8. Chief Mello, the chairman of POSTC, refused to issue Officer Cullen's certification card due

---

opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

[2] The parties dispute the rigor of the background investigation. *See* Def.'s Rule 56(a)2 Statement ¶¶ 5–6.

to MPD's report that Officer Cullen resigned while under investigation. *Id.* ¶ 9.

In light of this, the Plainville Police Department assigned Officer Cullen to police dispatcher duties rather than police officer duties. *Id.* ¶ 10.

On October 8, 2020, Chief Mello, on behalf of POSTC, notified Officer Cullen that POSTC would hold a hearing to determine whether Officer Cullen's certification should be reinstated. *Id.* ¶ 11. The notice cited Conn. Gen. Stat. § 7-291c and POSTC General Order 16-06. *Id.* ¶¶ 12–13. In advance of the hearing, POSTC provided Officer Cullen with the relevant exhibits and indicated that Officer Cullen could be represented and present his own evidence. Pl.'s 56(a)2 Statement ¶ 13.

On October 29, 2020, Officer Cullen attended the POSTC hearing regarding the reinstatement of his certification. Def.'s 56(a)2 Statement ¶ 14. On November 12, 2020, Chief Mello stated that POSTC would not issue Officer Cullen's certification card due to the circumstances of Officer Cullen's resignation from MPD. *Id.* ¶ 15. Chief Mello issued a written decision on December 22, 2020, stating that Office Cullen would "not receive certification from the POST Council and cannot perform the duties of a Police Officer in the State of Connecticut." *Id.* ¶ 16.

Officer Cullen filed an administrative appeal of this decision under the Uniform Administrative Procedures Act. *Id.* ¶ 17. On May 21, 2021, the appeal was dismissed because POSTC's decision did not meet the definition of a "contested case" and therefore, the court lacked jurisdiction. *Id.* ¶¶ 18, 21.

### B. Procedural History

On May 5, 2021, Officer Cullen filed the Complaint. Compl., ECF No. 1.

On May 25, 2021, Officer Cullen filed an Amended Complaint that added Connecticut

3

constitutional claims. Am. Compl.

On June 9, 2023, Officer Cullen filed a motion for default entry under Federal Rule of Civil Procedure 55(a). First Mot. for Default Entry 55(a), ECF No. 10.

On June 10, 2021, the Clerk of Court issued an order granting the motion for default entry under Rule 55(a). Order, ECF No. 11.

On June 14, 2021, Officer Cullen filed a motion for default judgment, as well as an exhibit regarding attorney's fees. First Mot. for Default J., ECF No. 12; Ex. Re: Att'y's Fees, ECF No. 13.

On June 18, 2021, Chief Mello filed a motion to set aside default. Mot. to Set Aside, ECF No. 15.

On June 22, 2021, the Court granted Chief Mello's motion to set aside default and denied Officer Cullen's motion for default judgment. Order, ECF No. 16; Order, ECF No. 17.

On July 14, 2021, Chief Mello filed an Answer to the Amended Complaint. Answer, ECF No. 19.

On July 15, 2021, Chief Mello filed a motion for security costs, Mot. for Sec. Costs, ECF No. 20, which the Court granted on July 23, 2021, Order, ECF No. 21.

On August 2, 2021, the parties submitted a joint Rule 26(f) report, Rep. of Rule 26(f) Planning Meeting, ECF No. 22, and on August 6, 2021, the Court entered a scheduling order, Scheduling Order, ECF No. 23.

On April 12, 2022, Officer Cullen filed a motion for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 25.

On May 5, 2022, Chief Mello filed a cross-motion for summary judgment. Def.'s Mot. for Summ. J., ECF No. 26.

On May 24, 2022, Officer Cullen filed a memorandum in opposition to Chief Mello's cross-motion for summary judgment. Mem. in Opp'n to Cross-Mot. for Summ. J., ECF No. 27 ("Pl.'s Opp'n").

On June 7, 2022, Chief Mello filed a reply in support of his cross-motion for summary judgment. Reply to Resp. to Cross-Mot. for Summ. J., ECF No. 28.

## II.      STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is well established that due process has both a substantive component and a procedural component. *See*

*Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006).

Chief Mello argues that the Court should grant summary judgment in his favor because "the undisputed material facts establish that the Plaintiff . . . fails to establish any violation of his due process rights" because "the plaintiff's future employment as a police officer is prohibited under Connecticut law." Def.'s Mot. for Summ. J. at 1, ECF No. 26.

Conversely, Officer Cullen argues that the Court should grant summary judgment in his favor because, in his view, Chief Mello violated Officer Cullen's substantive due process rights by refusing to issue the POSTC certification card based on an improper interpretation and enforcement of Conn. Gen. Stat. § 7-291c. Pl.'s Mot. for Summ. J. at 1. Alternatively, Officer Cullen argues that Chief Mello's actions "amounted to a violation of procedural due process in that he decertified Officer Cullen without following the procedural mandates of Conn. Gen. Stat. § 7-294d." *Id.*

The Court will address each claim in turn.

### A. Substantive Due Process[3]

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." *Leebaert v. Harrington*, 332 F.3d 134, 139 (2d Cir. 2003) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). The substantive component of the due process clause "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). To

---

[3] When considering a substantive due process claim, courts typically must first determine whether there is a "constitutional right at stake or [a] deprivation of property interest at stake." *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022) (citations and quotation marks omitted). When a property interest is at stake, courts apply rational basis review, and "the governmental regulation need only be reasonably related to a legitimate state objective." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996) (internal quotation marks omitted). Here, the parties appear to agree that a constitutional right is not at stake and that this case appropriately falls within the property interest context. *See* Pl.'s Mot. for Summ. J. at 2–9; Def.'s Mot. for Summ. J. at 8–15. Therefore, the Court analyzes the substantive due process claim under the property interest doctrine.

establish a substantive due process claim, the plaintiff must show that (1) he "had a valid property interest" and (2) the defendant "infringed on that property right in an arbitrary or irrational manner." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (citations omitted).

Officer Cullen argues that he had a property interest in his POSTC certification card because he met the three underlying requirements, as they are defined by the Connecticut state agency regulations. Pl.'s Mot. for Summ. J. at 4–5 (citing Conn. Agencies Regs. § 7-294e-14(a)). More specifically, under the Regulations of Connecticut State Agencies section 7-294e-14(a), POSTC "shall certify persons as police officers when they: (1) hold the position of probationary candidate in a law enforcement unit . . . , and (2) have completed a basic training program . . . , and (3) have completed a supervised field and departmental training program as required by the Council." In Officer Cullen's view, under this regulation, once a police officer meets these three requirements, it is mandatory for POSTC to certify him. *Id.* Officer Cullen emphasizes that he was hired as a probationary police officer, completed basic training, and completed the supervised field training program. *Id.* Finally, Officer Cullen emphasizes that the issue is not whether he has a property interest in future employment but instead, whether he has a property interest in his POST certification. Opp'n at 8–10.

In response, Chief Mello argues that Conn. Gen. Stat. § 7-291c "defeats any claim of right or entitlement to future employment." Def.'s Mot. for Summ. J. at 10. In Chief Mello's view, Officer Cullen's "claim that he maintains a professional license-based interest in his continued employment as a police officer must . . . be viewed as asserting that he maintains a protected property interest in regaining such employment" because it is undisputed that Officer Cullen resigned while under investigation in violation of § 7-291c. *Id.* at 13. Chief Mello

contends that Officer Cullen had only a "unilateral expectation" of regaining his certification and being employed as a police officer again. *Id.* at 14–15. Chief Mello emphasizes that Officer Cullen resigned as a police officer and forfeited his POSTC certification. *Id.* at 13. Chief Mello argues that there is no statute "mandating that the defendant transfer a certification card for" an officer who resigned a position while under investigation and, therefore, Officer Cullen cannot have a constitutionally protected property interest in it. *Id.* at 10–14. Finally, Chief Mello emphasizes that there is no meaningful difference between Officer Cullen's interest in his POST certification and Officer Cullen's interest in future employment as a police officer. Reply at 5–8.

The Court agrees.

To determine whether Officer Cullen's alleged property interest is protected by the Fourteenth Amendment, courts must look to state law or "understandings that secure certain benefits." *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."); *see also Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012). To qualify as a constitutionally protected property interest, a plaintiff must show that he has "a legitimate claim of entitlement" to the alleged property interest as opposed to "a unilateral expectation." *Roth*, 408 U.S. at 577. In other words, a plaintiff may have a constitutionally cognizable property interest if there are "rules or mutually explicit understandings that support his claim of entitlement." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (citation omitted).

Courts have held that a plaintiff may possess a "property interest" in a professional license, at least when the government's power to revoke or suspend the license is constrained by law or regulation (for instance, when state law requires "cause" for termination). *See, e.g.*, *Barry*

*v. Barchi*, 443 U.S. 55, 64 (1979) (horse-racing license); *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (firearm-dealing license). "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971); *see also* Black's Law Dictionary (10th ed. 2014) (defining a "license" as a "privilege granted by a state or city upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible" and a "certificate" as a "document certifying the bearer's status or authorization to act in a specified way").

This case, however, differs from the typical professional licensing case because Connecticut law enforcement agencies are barred from hiring Officer Cullen under section 291c.[4]

A similar issue was addressed in *Meyers v. Kishimoto*, where the court held that a tenured teacher did not have a constitutionally protected property interest in continued employment as a teacher because his teaching certification lapsed. 217 F. Supp. 3d 563, 580 (D. Conn. 2016). There, the relevant Connecticut statutes defined teacher as a "certified professional employee" and prohibited "the employment of, and the payment of a salary to, any teacher who does not possess a valid teaching certificate." *Id.* at 578. Based on this interpretation of the statute, the court found that "a teacher who is not certified and whose employment would be 'contrary to

---

[4] Officer Cullen argues that section 291c does not apply to him because his off-duty conduct does not fall within the definition of "malfeasance" as it is used in the statute. Opp'n at 10–14. The only Connecticut court to interpret this statute has stated that "malfeasance means the commonly approved usage" which is "wrongdoing or misconduct esp. by a public official." *Bryant v. Police Officer Standards & Training Council*, No. HHBCV166033504S, 2017 WL 4427065, at *6 (Conn. Super. Ct. Aug. 28, 2017) (internal quotation marks omitted). This definition does not include a requirement that the wrongdoing or misconduct be while the public official is "on-duty." Notably, this interpretation is consistent with the plain language of the statute, which does not explicitly include a requirement that the malfeasance be committed on duty but does explicitly include such a requirement for "serious misconduct." Conn. Gen. Stat. § 7-291c(d); *see also Brennan-Centrella v. Ritz-Craft Corp. of Penn.*, 942 F.3d 106, 111 (2d Cir. 2019) ("As a matter of statutory construction, we presume that the legislature follows the principle of *expressio unius est exclusio alterius*—that is, 'mention of one impliedly excludes others.'" (citations omitted)).

10

law' could not have a reasonable expectation in continued employment and, it necessarily follows, no longer has a property interest protected by the Constitution." *Id.*

Similarly, here, while Officer Cullen may qualify for recertification under the agency regulations, he cannot legally be hired unless he is exonerated. *See* Conn. Gen. Stat. § 291c(c). Therefore, his POST certification cannot be a constitutionally protected property interest because his continued employment as a police officer was "contrary to law." *See Meyers*, 217 F. Supp. 3d at 578.

Finally, it is not relevant that, due in part to Plainville hiring Officer Cullen before Manchester's informed POSTC and Plainville of the 291c issue, Officer Cullen was employed as a probationary officer because the focus of the property interest inquiry is on the state law that confers the right, not on the factual circumstances. *See Roth*, 408 U.S. at 577 ("Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."); *see also Minasi v. City of Utica*, No. 6:10-cv-0975 (NAM/DEP), 2011 WL 6842988, at *9 (N.D.N.Y. Dec. 29, 2011) (finding that the plaintiff's "provisional" license to operate a taxi pending a decision on his renewal application "did not in any way affect" the plaintiff's claim of entitlement because he lacked a legitimate claim of entitlement under the statutory scheme).

Accordingly, Chief Mello's motion for summary judgment will be granted on this basis and Officer Cullen's motion for summary judgment will be denied.

### B. Procedural Due Process

In evaluating a procedural due process claim, the Court must first determine whether a constitutionally protected property or liberty interest exists. *Roth*, 408 U.S. at 570–71 ("[T]o determine whether due process requirements apply in the first place, we must look not to the

'weight' but to the nature of the interest at stake. We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." (citation omitted)); *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) ("The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." (citation omitted)).

As discussed at length above, Officer Cullen cannot show that he has a constitutionally protected property interest that was deprived by Chief Mello's conduct.

Accordingly, Chief Mello's motion for summary judgment will be granted on this basis and Officer Cullen's motion for summary judgment will be denied.

### C. Connecticut Constitutional Claims

Because the Court will dismiss all federal claims against Chief Mello, the Court declines to exercise supplemental jurisdiction over Officer Cullen's state law constitutional claims. *See* 28 U.S.C. § 1367(c)(3) (stating that if a federal court dismisses all federal claims, it may decline to exercise supplemental jurisdiction over supplemental state law claims); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Sadler v. Rowland*, No. 3:01-cv-01786 (CFD), 2004 WL 2061518, at *8 (D. Conn. Sept. 13, 2004) ("The court has dismissed all federal claims against defendant Tokarz. Thus, the court declines to exercise jurisdiction over Sadler's state law claims against . . . Tokarz.").

Accordingly, those claims are dismissed without prejudice to renewal in state court. *See Zinter v. Handling, Inc. v. Gen. Elec. Co.*, 296 F. App'x 124 (2d Cir. 2008) (finding it was "appropriate to have all the state causes of action dismissed without prejudice to their consideration in state court").

## IV. CONCLUSION

For the foregoing reasons, Officer Cullen's motion for summary judgment is **DENIED.**

Chief Mello's motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment in favor of Chief Mello and close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of March, 2023.

<u>/s/ Victor A. Bolden</u>
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE